SO ORDERED: January 14, 2011.



_____
Anthony J. Metz III
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| GREGORY ALLEN HEMMER ) | CASE NO. 09-15602-AJM-7 |
| ) | |
| Debtor ) | |

**ORDER DENYING TRUSTEE'S (FIRST) MOTION FOR TURNOVER**

This matter came before the Court for hearing on December 13, 2010 upon the Trustee's Motion for Turnover (the "Trustee's Motion") and the Debtor's objection (the "Objection") thereto.  The Debtor appeared at the hearing in person and by counsel, KC Cohen; the Trustee appeared in person, by counsel, Paul Gresk, and by his accountant, Rodney Hall.  At the conclusion of the hearing, the Court took ruling on the matter under advisement and allowed Debtor's counsel 7 days to file a post hearing brief, which counsel filed on December 20, 2010.  For the reasons stated below, the

1

Court sustains the Objection and denies the Trustee's Motion. [1]

*Background*

Can a debtor's interest in an ERISA [2] plan remain unreachable by his creditors (trustee) where the plan itself may no longer be "tax qualified" under Internal Revenue Code §401(a) due to the allegedly improper use of plan funds?  The answer, surprisingly, is "yes".

While employed at Hallmark, the Debtor participated in his employer's ERISA plan.  Upon his departure from Hallmark, the Debtor started his own business, KDKR, Inc, ("KDKR") a Nevada corporation.  KDKR was in the business selling fitness franchises.  In early October 2005, KDKR established a profit sharing plan known as the KDKR, Inc. Profit Sharing Plan & Trust (the "Plan").  The Plan trustees are the Debtor and the Debtor's spouse, Darci Hemmer.  The Debtor rolled his entire Hallmark pension proceeds (nearly $440,000) into the Plan.  As of May, 2006, the Debtor was the sole participant in the Plan.  The Plan owns 39,000 shares of KDKR stock and the Debtor owns 100.  Between 2005 and 2008, some of the Debtor's living expenses were paid from Plan funds and the Debtor used some of the Plan funds to start fitness franchises.  During that same period, KDKR made minimal or no revenue.  On or about September 11, 2009, KDKR received a favorable determination letter from the IRS that

---

[1] The Trustee's Motion was initially heard on September 15, 2010 wherein the Court from the bench granted the Trustee's Motion based on the evidence presented at that hearing, and ordered turnover of the subject funds.  The Court on September 20th entered its written order granting the Trustee's Motion.  The Debtor thereafter moved for relief from the September 20th order, to which the Trustee had no objection, and therefore, the September 20th order was vacated.  The Trustee's motion, therefore, was "reheard" on December 13, 2010 and taken under advisement.

[2] Employee Retirement Income Security Act of 1974, 29 U.S.C.A. §1001, et seq.

2

the Plan was tax-qualified under §401 of the Internal Revenue Code. When the Debtor filed his chapter 7 case on October 23, 2009 (the "Petition Date"), the balance of his interest in the Plan was $66,824.00.

### *Discussion*

ERISA provides for the uniform national treatment of pension plans. 29 U.S.C. A. §1001 et seq. Because it is a source of retirement income, ERISA requires that a plan contain antialienation and anti-assignment clauses, i.e. provisions that prohibit a participant from pledging his plan interest and likewise prohibit a creditor from garnishing it. 29 U.S.C. A. §1056(d)(1). Section §401 of the Internal Revenue Code also requires a plan to contain antialienation features for it to be "tax qualified". 26 U.S.C. A. §401(a)(13))(A).

Section 541(c)(2) of the bankruptcy code removes from the expansive definition of "property of the estate" a restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under "applicable nonbankruptcy law". ERISA is "applicable nonbankruptcy law" where the antialienation provisions required for ERISA plans constitute enforceable restrictions on transfers of interests. Thus, a debtor's interest in an ERISA plan is excluded from property of the debtor's bankruptcy estate under 11 U.S.C.A.§541(c)(2). *Patterson v Shumate*, 504 U.S. 753,758, 112 S.Ct. 2242, 2247, 119 L. Ed.2d 519 (1992).

There is no dispute that, at least as of September, 2009, the Plan was an ERISA plan, given the favorable determination letter from the IRS which indicated that the Plan was tax-qualified under §401 of the IRC. (The Plan could not have been determined to be tax qualified had it not contained an antialienation clause). The Trustee's sole

argument for turnover is that the Debtor's use of Plan funds for personal living and business expenses as well as KDKR's lack of revenue (e.g. KDKR engaging in more of a "hobby" than a bonafide "business") invalidates the Plan's tax-qualified and ERISA status.  Consequently, if the Plan is no longer tax qualified, then it is not an ERISA plan, and if the Plan is no longer an ERISA plan, the *Shumate* protection afforded to the Debtor 's interest in it disappears.

Tax qualification and ERISA qualification are separate and distinct features of a plan and "an ERISA plan that is not or may not be tax qualified nevertheless continues to be governed by ERISA for essentially every other purpose", *In re Sewell*, 180 F.3d 707, 711 (5th Cir. 1999).  A plan trustee can violate his fiduciary duties as trustee and still invoke Shumate to shield his interest in the plan. *In re Baker,* 114 F.3d 636, 640 (7th Cir. 1997)    In Baker, the debtor's pension funds remained protected, despite the alleged violations which were many and far more extensive than the violations alleged here:

> Baker violated his duties as one of the plan's trustees.  The plan states that loans must be requested in writing.  Baker disbursed loans without written requests.  The plan requires the consent of a participant's spouse for any loan; on behalf of the plan, Baker made loans without obtaining this consent.  The plan states that only one loan may be outstanding to one participant at a time; Baker made multiple loans to two participants, including himself.  The plan requires borrowers to pledge the balance of their accounts as collateral; borrowers did not do this. The plan requires borrowers to repay principal and interest within five years, and to make interest payments at least quarterly.  Borrowers from [the] plan did not repay a dime of principal, and only one borrower paid anything towards interest.  The plan sets caps on the amount that could be borrowed; these were sometimes exceeded.  Some loans were disbursed from the plan to Bakco rather than to the participant, as the plan requires... Baker may have exposed Bakco and himself to extra taxes...for breach of fiduciary duties under ERISA-although most of the violations appear to be technical....Nonetheless, violations of ERISA do not make ERISA inapplicable....if extensive violations of a federal law made that law go away, the rules would be chimerical.   ERISA applied, and was violated; for purposes of [Patterson v. Shumate], what matters is the application of ERISA's

subchapter I, rather than observance of its rules.

*Baker*, 114 F.3d 636, 639-40. [3]

Moreover, a plan trustee or participant can "money launder" and deposit funds obtained from a conspiracy to commit mail fraud in his plan and still be afforded the antialienation protections that prevent creditors from reaching plan proceeds. *In re Jewell*, 101 AFTR 2d 2008-1164. [4] The fact that the Debtor may lose the special tax advantages afforded §401(a) plans does not prevent the Plan's antialienation provisions from being enforced under ERISA. Accordingly, the Debtor's interest in the Plan here remains protected under *Shumate*, and the Trustee's motion is DENIED.

# # #

Distribution:
KC Cohen, Attorney for Debtor
Paul D. Gresk, Attorney for Trustee Thomas Krudy
Thomas A. Krudy, Trustee

---

[3] The creditor in *Baker* argued that Baker should not have been able to breach his duties as plan fiduciary and then use ERISA as a shield, to which the Court noted "inequitable or not, however, the anti-alienation clause governs. There is no 'equity' exception to §1056(d)(1) of ERISA , or §541(c)(2) of the Bankruptcy Code". *Baker*, 114 F.3d at 640.

[4] See also, *Guidry v. Sheet Metal Workers National Pension Fund, et al.*, 493 U.S. 365, 110 S.Ct. 680 (1990) where the Court enforced the plan's antialienation clause and refused to impose a constructive trust on the pension benefits of a union official who, as trustee of the pension plan, stole money from the union. The Court there was urged to make an "equitable exception" to remedy the official's malfeasance. The Court determined that such an exception could be made only by Congress amending the statute. *Guidry*, 498 U.S. at 376; 110 S.Ct. at 687. Congress apparently heeded the call by enacting the Mandatory Victim Restitution Act ("MVRA"), which allows enforcement of a restitution judgment against all property or rights to property held by the defendant. 18 U.S.C. A. §3663A-3664. Several courts have held that the MVRA is an exception to ERISA's antialienation features, and thus allows victims with restitution judgments to garnish a defendant's plan benefits. *U.S. v. Miller*, 588 F. Supp.2d 789, 795-96 (W. D. Mich. 2008).